IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WILLIAMS,

                Plaintiff,

    v.

LOUIS GIORLA, et al.,

                Defendants.

CIVIL ACTION
NO. 11-6565

## OPINION

**Slomsky, J.**                                                                 **August 2, 2013**

## I.    INTRODUCTION

In 2010, Plaintiff Michael Williams was a state prisoner at the Detention Center in

Philadelphia, Pennsylvania.  Defendant Aramark Correctional Services, LLC ("Defendant

Aramark" or "Aramark") was the on-site food service provider at the prison.  Defendant

Corizon Health, Inc. ("Defendant Corizon Health" or "Corizon Health") was responsible for the medical

care of inmates housed at the Detention Center.

On June 27, 2010, Plaintiff alleges he was served his evening meal, prepared by Aramark,

on an extremely hot tray.  Because of the high temperature, he dropped the tray and spilled hot

food onto his leg.  Later that evening, Plaintiff noticed blisters on his leg and went to the medical

office for treatment.  Without providing any medical care, Corizon Health's personnel

supposedly told him to return the following day.  The next day, Corizon Health's personnel

provided Plaintiff with a bandage for his blisters.  No further treatment was rendered by Corizon

Health or requested by Plaintiff.

In August 2010, about one month after the incident, Plaintiff returned to the medical

office with blisters still on his leg.  Corizon Health personnel provided care for the blisters over

the course of the month.  Plaintiff claims the hot food burn left a permanent scar on his leg the size of a silver dollar.

Based on these events, Plaintiff initiated the instant lawsuit claiming that his Eighth Amendment rights were violated by Aramark, Corizon Health, and/or their employees or agents because:  (1) Aramark served inmates food on extremely hot trays, despite numerous complaints from inmates about the excessive heat; and (2) Corizon Health failed to provide adequate medical care for Plaintiff's blisters.  Plaintiff also alleges numerous state tort violations against each Defendant.[1]

Presently before the Court are Defendant Corizon Health's Motion to Dismiss the Second Amended Complaint (Doc. No. 34) and Defendant Aramark's Motion to Dismiss the Second Amended Complaint (Doc. No. 35).[2]  For reasons that follow, the Court will grant both Motions to Dismiss.[3]

---

[1] Plaintiff initiated this civil rights case pro se.  (See Doc. No. 1.)  Plaintiff was permitted to file an Amended Complaint.  (Doc. No. 25.)  He then obtained counsel who filed the instant Second Amended Complaint.

[2] Plaintiff also named the City of Philadelphia and several City officials and employees as Defendants in this case.  The City of Philadelphia Defendants did not move to dismiss the Second Amended Complaint, but instead filed an Answer.  (See Doc. No. 32.)  The Court will therefore only refer to them to provide the factual background necessary to decide the Motions to Dismiss.

[3] In deciding these Motions, the Court has considered the following:  Second Amended Complaint (Doc. No. 31); Defendant Corizon Health's Motion to Dismiss (Doc. No. 34); Defendant Aramark's Motion to Dismiss (Doc. No. 35); Plaintiff's Responses in Opposition (Doc. Nos. 36 and 39); Defendant Corizon Health's Replies (Doc. No. 42, 43, and 44); the arguments of counsel at the December 19, 2012 hearing; Defendant Aramark's Supplemental Brief in Further Support of the Motion to Dismiss (Doc. No. 47); and Plaintiff's Supplemental Brief in Opposition (Doc. No. 49).

## II.  FACTUAL BACKGROUND[4]

At all relevant times, Plaintiff Michael Williams was incarcerated at the Detention Center, 8201 State Road, Philadelphia, Pennsylvania.  (Doc. No. 31 at 6.)  The Detention Center is part of the Philadelphia Prison System, which is a department within the City of Philadelphia.  (Id. at 7.)  Defendants Louis Giorla, Commissioner of the Philadelphia Prison System ("Commissioner Giorla"), Joyce Adams, Detention Center Warden ("Warden Adams"), and Sargeant Dix, Detention Center Correctional Officer ("Correctional Officer Dix"), were responsible for ensuring the safety of inmates housed at the facility.  (Id. at 6-8.)

The Philadelphia Prison System has contracted with outside companies to provide certain inmate services.  For example, Aramark supervises the daily preparation and service of meals to inmates.  (Id. at 8-9.)  Defendant Gregg Peoples was Aramark's kitchen supervisor at the Detention Center ("Aramark Supervisor Peoples").  (Id. at 9.)  Corizon Health was responsible for providing inmates with medical care.  (Id. at 9-10.)

On a daily basis, Aramark served hot meals to inmates on rubber trays.  (Id. at 10.)  Both the food and trays were heated to temperatures of at least 180 degrees before being served to inmates.  (Id.)  Because of these high temperatures, Aramark provided those serving the food with protective leather gloves.[5]  (Id.)  The inmates receiving the hot food trays were not given such protection.  (Id.)

On June 27, 2010, Plaintiff claims:

> [He] received his dinner served on one of the extremely hot food trays by a fellow inmate wearing leather gloves.

---

[4] At the motion to dismiss stage, the Court must accept all well-pled facts as true.  Therefore, the following factual narrative is taken entirely from the Second Amended Complaint.

[5] Detention Center inmates were employed to serve fellow inmates their daily meals.  (Doc. No. 31 at 10.)

> Plaintiff attempted to carry the food tray to a table, but had to put it down due to the extremely hot temperature of the tray.
>
> A correctional officer ordered [him] to take the tray immediately to a table or he would be put in "the hole," or restricted disciplinary housing.
>
> Plaintiff attempted to comply with the correctional officer's order but dropped the tray due to its extreme heat.
>
> When [he] dropped the tray a scalding hot mixture of mashed potatoes, vegetables and gravy splashed onto his right lower leg and stuck there.
>
> Plaintiff removed the food from his leg so that he would not peel off the skin of his leg. After removing the food from his leg, and receiving no assistance or offers of assistance from any of the correctional officers on hand, [he] returned to his cell block and went to sleep.
>
> Plaintiff woke up later that evening and found three blisters on his leg where the scalding food had been. One of the blisters was the size of a silver dollar, while the other two were the size of dimes.

(Id. at 11 (paragraph numbering omitted).)

After waking, Plaintiff showed Correctional Officer King the blisters on his leg.[6]  (Id. at 11.)  She filled out an incident report and advised Plaintiff to see a prison doctor.  (Id.)  Plaintiff immediately sought care from the Detention Center medical office, which was operated by Corizon Health, but was told by medical office personnel — after a short wait — to come back the following day.[7]  (Id. at 12.)

On June 28, 2010, Plaintiff returned to the Detention Center medical office with a pass provided by Correctional Officer King.  (Id.)  Medical office personnel "placed a band aid on

---

[6] Plaintiff has not provided a first name for Correctional Officer King, nor has she been named as a Defendant in this case.

[7] As stated above, Corizon Health operates the Detention Center medical office.  At this stage of the litigation, Plaintiff has been unable to identify the Corizon Health employees or agents he interacted with during 2010.  These individuals have been named as Defendants John Doe #1 and #2 in the Second Amended Complaint.  In this Opinion, the Court will refer to John Doe #1 and # 2 as medical office personnel.

[his] leg." (Id.)  At that time, Plaintiff did not voice any complaints about the treatment he received.  He was not scheduled for a follow-up visit, nor did medical office personnel initiate any further contact with him concerning his blisters.  (Id.)

Between August 3 and 5, 2010, Plaintiff, on his own initiative, returned to the Detention Center medical office for treatment.  (Id.)  Medical office personnel then began providing him with "wound care," which continued for the remainder of the month.  (Id.)

On numerous prior occasions, Plaintiff and "other prisoners" — some of whom also allegedly sustained burns — had purportedly complained to Aramark, Aramark Supervisor Peoples, Warden Adams, and Correctional Officer Dix about the dangerously hot food trays, but the problem was not addressed.  (Id. at 10-11.)  Because of the heat induced blisters, Plaintiff now has "a highly visible discolored permanent scar the size of a silver dollar [on] his right lower leg," along with mental and emotional harm arising from the injury.  (Id.)

Based on these events, Plaintiff initiated this civil rights lawsuit against the City of Philadelphia, Aramark, Corizon Health, and certain employees and/or agents of each entity.  The Second Amended Complaint alleges the following violations:

- Count I — 42 U.S.C. § 1983, against City of Philadelphia and Commissioner Giorla for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count II — 42 U.S.C. § 1983, against Warden Adams for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count III — 42 U.S.C. § 1983, against Correctional Officer Dix for failure to report the dangers of serving extremely hot meals to inmates on hot trays in violation of the Eighth Amendment.

- Count IV — 42 U.S.C. § 1983, against Aramark for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count V — 42 U.S.C. § 1983, against Aramark Supervisor Peoples for failure to report the dangers of serving extremely hot meals to inmates on hot trays in violation of the Eighth Amendment.

- Count VI — Negligence and Recklessness, against Aramark and Aramark Supervisor Peoples.

- Count VII — 42 U.S.C. § 1983, against Corizon Health medical office personnel (John Doe #1) for failure to provide necessary medical treatment in violation of the Eighth Amendment.

- Count VIII — 42 U.S.C. § 1983, against Corizon Health medical office personnel (John Doe #2) for failure to provide necessary medical treatment in violation of the Eighth Amendment.

- Count IX — 42 U.S.C. § 1983, against Corizon Health for deliberate indifference to the serious medical needs of Detention Center inmates in violation of the Eighth Amendment.

- Count X — Professional Malpractice, against Corizon Health medical office personnel (John Doe #1).

- Count XI — Professional Malpractice, against Corizon Health medical office personnel (John Doe #2).

- Count XII — Professional Malpractice and Corporate Negligence, against Corizon Health.

(See id. at 13-34.)

Defendants Aramark[8] and Corizon Health[9] have now moved to dismiss the Second

Amended Complaint for failure to state a claim upon which relief can be granted pursuant to

---

[8] Aramark also moves to dismiss the Second Amended Complaint on behalf of Aramark Supervisor Peoples.

[9] Corizon Health moves to dismiss the Second Amended Complaint on behalf of itself and both John Does.

Federal Rule of Civil Procedure 12(b)(6).  The Motions to Dismiss are now ripe for disposition and, as noted above, will be granted.[10]

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's complaint must state a plausible claim. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Iqbal, the leading case on the matter, explained that this plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  This means that a simple recitation of the elements of a claim, accompanied by conclusory statements of law, will not suffice.  Id. (citing Twombly, 550 U.S. at 555).

Applying this principle, in Malleus v. George, the Third Circuit explained that the inquiry requires that a district court:  "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged."  641 F.3d 560, 563 (3d Cir. 2011).  Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief.  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

---

[10] Because the Court will dismiss all federal claims against Defendant Aramark and Aramark Supervisor Peoples (Counts IV and V), and against Defendant Corizon Health and John Doe #1 and #2 (Counts VII – IX), the Court will decline to exercise supplemental jurisdiction over the remaining state law claims against these Defendants (Counts VI, X, XI, and XII).  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . .").  Thus, only the City of Philadelphia, Commissioner Giorla, Warden Adams, and Correctional Officer Dix will remain as Defendants in this case.

**IV.	DISCUSSION**

Plaintiff's federal claims against Defendants Aramark, Corizon Health, and their employees and/or agents are based on 42 U.S.C. § 1983. "'To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States.'" Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (citation omitted). Thus, "'[t]he first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Id. (citations omitted).

Here, Plaintiff contends his Eighth Amendment rights were violated by Defendants. Specifically, the claims against Aramark arise from the purported service of high temperature food on excessively hot trays to prison inmates. Corizon Health's misconduct is based on allegations of inadequate medical treatment of Plaintiff's burns.

"The Eighth Amendment prohibits 'cruel and unusual punishments.' The amendment proscribes punishments that 'involve the unnecessary and wanton infliction of pain.'" Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir. 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Court will discuss each Eighth Amendment claim in this case individually.

**A.	Plaintiff Has Not Sufficiently Stated Eighth Amendment Claims Against Aramark and Aramark Supervisor Peoples**

**1.	Aramark and Aramark Supervisor Peoples were State Actors**

As noted above, to state a claim under § 1983 a plaintiff must allege that the constitutional violation "was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). As a threshold matter, Aramark argues that it cannot be held liable under § 1983 because it is a private corporation, not a state actor. The Court disagrees.

In West, the United States Supreme Court explained that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" 487 U.S. at 49 (citation omitted). Therefore, "[t]o constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. (citation omitted).

Using this definition, the West court held that a private doctor, who had contracted with the State to provide inmates with medical care, was a state actor for § 1983 purposes. In reaching this conclusion, the court explained:

> The fact that the State employed [the physician] pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. . . . Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [the physician]; and [the physician] voluntarily assumed that obligation by contract.

Id. at 55-56.

Using the West principles, the court in McCullum v. City of Philadelphia determined that an Aramark food service employee — who was working in a Philadelphia Prison System kitchen pursuant to a contract between Aramark and the City of Philadelphia — was a state actor for purposes of § 1983 liability. No. 98-5858, 1999 WL 493696, at *2-3 (E.D. Pa. July 13, 1999). The McCullum court explained:

The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state. Providing food service, like medical care, to those incarcerated people is one part of the government function of incarceration. Thus, the City of Philadelphia has a duty to provide food service to inmates housed at [the prison]. Aramark entered into a contract with the City of Philadelphia to provide such food services at [the prison]. . . . The court finds that Aramark acted under color of state law for purposes of § 1983 by performing the traditional government function of providing food service at a prison.

Id. at *3 (internal citations and quotation marks omitted).

Here, as in McCullum, Aramark was acting under color of state law in the preparation of food for inmates. Plaintiff was incarcerated within the Philadelphia Prison System. The Philadelphia Prison System had an affirmative obligation to provide food service to all inmates, and this function was delegated to Aramark. Aramark voluntarily assumed this obligation through contract. Thus, Plaintiff has a right to challenge under § 1983 Aramark and Aramark Supervisor Peoples' performance of "the traditional government function of providing food service at a prison." See id.[11]

---

[11] The cases cited by Aramark to support the contrary position, such as Pavalone v. Lackawanna Cnty. Prison, No. 11-1444, 2011 WL 3794885 (M.D. Pa. Aug. 26, 2011), and Parrish v. Aramark Foods, Inc., No. 11-5556, 2012 WL 1118672 (D.N.J. Apr. 2, 2012), are distinguishable from the instant case. In Pavalone, the plaintiff was a state prisoner who was allegedly deprived of food while incarcerated. 2011 WL 3794885, at *1. Aramark, as the prison food service provider, was named as a defendant. The court dismissed Aramark as a defendant because the plaintiff failed to plead even a single fact that linked Aramark to the alleged deprivation of food. See id. at 4. In Parrish, a state prisoner filed a civil rights suit against prison officials and Aramark after he bit into a rusty paper clip in his lunchtime bowl of noodles. 2012 WL 1118672, at *1. The court dismissed the case against Aramark because the plaintiff had "alleged no facts that would justify treating Aramark . . . as a 'state actor,' nor ha[d] [the] [p]laintiff alleged any facts that would suggest that the presence of a foreign object in his food was the result of a policy, practice, or custom." Id. at *5. In this case, on the other hand, Plaintiff contends that it was Aramark's express policy to heat and serve prisoners food at extremely high temperatures, and this excessive heat was the cause of Plaintiff's bodily injuries.

### 2. The Conduct of Aramark and Aramark Supervisor Peoples Did Not Pose a Substantial Risk of Serious Harm to Plaintiff

Although Aramark and Aramark Supervisor Peoples were acting under color of state law in their preparation of hot food for Detention Center inmates, Plaintiff has failed to sufficiently state an Eighth Amendment claim against them upon which relief may be granted.

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' restrains prison officials from certain actions (e.g., the use of excessive force against prisoners), and imposes on them a duty to provide 'humane conditions of confinement.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "'[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.'" Id. (citation omitted). Consequently, "[f]or an alleged deprivation [of humane conditions of confinement] to rise to the level of an Eighth Amendment violation, it must 'result in the denial of the minimal civilized measure of life's necessities.'" Id. (citation omitted).

Here, Plaintiff's claims against Aramark and Aramark Supervisor Peoples are based on a failure to protect — that is, they allegedly failed to protect Plaintiff from physical injury by preparing and serving him food at an excessively high temperature. "To succeed on an Eighth Amendment claim for failure to protect, a plaintiff must show that: (1) 'he is incarcerated under conditions posing a substantial risk of serious harm;' and (2) prison officials operated with 'deliberate indifference to [his] health or safety.'" Wallace v. Doe, No. 12-3926, 2013 WL 363484, at *3 (3d Cir. Jan. 31, 2013) (quoting Farmer, 511 U.S. at 834 (emphasis added)).

The first prong — substantial risk of serious harm — is "evaluated objectively." Betts, 621 F.3d at 256. "Objectively serious harm . . . requires an assessment of society's view of the risk; i.e., whether 'it violates contemporary standards of decency to expose anyone unwillingly to

such a risk.'" Id. at 257 (quoting Helling v. McKinney, 509 U.S. 25, 26 (1993) (emphasis in original)). Thus, to satisfy the objective component of an Eighth Amendment claim for failure to protect, a plaintiff must establish:

> (1) the seriousness of the injury, (2) a sufficient likelihood that serious injury will result from [the challenged conduct], and (3) the risks associated with permitting [the challenged conduct] violate contemporary standards of decency.

Id.

In Betts, the plaintiff was a juvenile delinquent housed in the New Castle Youth Development Center ("YDC"). Id. at 252. On weekends, YDC residents were allowed to play sports under the direct supervision of YDC staff. Id. at 252-53. One weekend, the plaintiff and nine other residents decided to play a game of tackle football — residents from Philadelphia against those from Pittsburgh. Id. at 253. Two YDC staff members supervised the game, and, as was the usual practice of the residents, they played tackle football without any equipment. Id. During a kickoff, the plaintiff ran full speed down the field and tackled the ball carrier head first. Id. This contact resulted in a spinal injury so severe that the plaintiff became a quadriplegic. Id. He then filed suit against YDC staff claiming his Eighth Amendment rights were violated by allowing residents to play tackle football without any protective equipment. Id. at 256.

Using the factors stated above, the Third Circuit held that allowing YDC residents to play tackle football without any equipment was not an objectively serious harm sufficient for an Eighth Amendment claim. Id. at 257. The court explained:

> [As for the first element,] [i]t goes without saying that quadriplegia is an exceptionally serious harm. But [as for the second element] [plaintiff] has presented no evidence that playing tackle football without equipment poses a "substantial risk" of serious harm. . . . We disagree with [plaintiff]'s assertion that the excessive nature of the risk of serious injury from football is obvious. . . .

Life is fraught with risk of serious harm and the sports world is no exception. But an Eighth Amendment violation may not be predicated on exposure to <u>any</u> risk of serious harm; the risk must be "substantial." [T]he record in this case is devoid of evidence from which a reasonable jury could conclude that serious injury is a common or likely occurrence in tackle football games . . . .

Moreover, [as for the third element] [plaintiff] has failed to show that the risk complained of is one that society would refuse to tolerate. . . . The risks of injury posed by tackle football without equipment do not violate contemporary standards of decency. To the contrary, those risks are assumed daily by the incarcerated and the free alike.

<u>Id.</u> at 257-58 (internal citations omitted) (emphasis in original).

Likewise, in <u>Clayton v. Morgan</u>, No. 11-623, 2012 WL 1448332 (W.D. Pa. Feb. 16, 2012), <u>aff'd</u>, 501 F. App'x 174 (3d Cir. 2012), a state prisoner's complaint was dismissed for, among other reasons, failing to allege the substantial risk of serious harm necessary to state an Eighth Amendment claim. In <u>Clayton</u>, the plaintiff was a prisoner at a state facility in Greenburg, Pennsylvania. <u>Id.</u> at *2. During the winter, the Shift Commander at the prison was responsible for ensuring the exercise yard was safe for inmate use. <u>Id.</u> One morning, a prison Sergeant told the Shift Commander not to open the yard because of dangerous icy conditions. <u>Id.</u> The Shift Commander ignored the warning, and, as a consequence, the plaintiff slipped and fell on black ice while walking around the track in the prison yard. <u>Id.</u> Plaintiff suffered back injuries as a result of the accident. <u>Id.</u> He then sued the Shift Commander for violating his Eighth Amendment rights. <u>Id.</u> at *3.

In dismissing the complaint, the <u>Clayton</u> court held that "[w]ith regard to the objective prong, allowing prisoners out [in the] yard during a winter day where ice may be present in the yard simply does not give rise to a substantial risk of serious harm or challenge common standards of decency." <u>Id.</u>; <u>see also id.</u> at *4 (citing <u>Reynolds v. Powell</u>, 370 F.3d 1028, 1030, 1032 (10th Cir. 2004) ("[W]hile the standing-water problem [in the prison shower area] was a

potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large. . . . Consequently, we conclude, as a matter of law, that the hazard encountered by plaintiff was no greater than the daily hazards faced by any member of the general public who is on crutches, and that there is nothing special or unique about plaintiff's situation that will permit him to constitutionalize what is otherwise a state-law tort claim.")).

When the factors set forth in Betts are applied to the facts of this case, viewed in a light most favorable to Plaintiff, the Court finds that the preparation and service of hot food in the Detention Center cafeteria by Aramark and Aramark Supervisor Peoples does not present a "substantial risk of serious harm."[12] First, Plaintiff did not suffer a serious injury. He spilled a mixture of hot vegetables and gravy directly onto the lower part of his right leg which caused blisters. Medical office personnel treated the blisters over the course of a few weeks, and all that remains is a scar the size of a silver dollar. This type of physical harm does not rise to the level of an objectively serious injury. See, e.g., Abjul-Hadi v. Dittsworth, No. 11-1263, 2012 WL 3260361, at *4 (W.D. Pa. Aug. 8, 2012) (dismissing Eighth Amendment claim — which alleged Correctional Food Service staff did not properly train prisoners working in the kitchen — because "allowing prisoners to push containers of hot water rather than pull them simply does not give rise to a substantial risk of serious harm" despite third-degree burns the plaintiff received when water spilled onto his feet).

---

[12] As stated above, the second prong of an Eighth Amendment claim is deliberate indifference. "To determine whether officials operated with deliberate indifference, courts question whether they consciously knew of and disregarded an excessive risk to the prisoner's well being." Wallace, 2013 WL 363484, at *3. Plaintiff alleges that he and other inmates had complained to Aramark and Aramark Supervisor Peoples about the hot food prior to the June 27, 2010 incident, but nothing was done. However, because Plaintiff has not adequately pled the existence of a substantial risk of serious harm, the Court does not need to address the deliberate indifference element of an Eighth Amendment claim.

Second, even if the scar was considered a serious injury, the risk of being burned by a hot food spill is not a "substantial risk." As the <u>Betts</u> court noted, "[l]ife is fraught with risk of serious harm . . . [b]ut an Eighth Amendment violation may not be predicated on exposure to <u>any</u> risk of serious harm; the risk must be 'substantial[,]'" that is, "a common or likely occurrence." 621 F.3d at 258 (emphasis in original). Wherever food and drink are served at a high temperature there is a risk that direct physical contact with these substances could cause injury, but the risk is not inherently "substantial" as defined by the Third Circuit. Here, Plaintiff alleges: "other prisoners at the Detention Center had complained about the hot food trays and/or sustained burns from the extremely hot food trays." (Doc. No. 31 at 11.) Plaintiff provides no further detail. Such vague allegations are not sufficient to show that the risk of hot food burns was a "common or likely occurrence" during daily meals in the prison cafeteria. See <u>Betts</u>, 621 F.3d at 258.

Lastly, "[t]he risks of injury posed by [spilling hot food onto oneself] do not violate contemporary standards of decency. To the contrary, those risks are assumed daily by the incarcerated and the free alike." See <u>Betts</u>, 621 F.3d at 258. It is noteworthy that neither Aramark nor Aramark Supervisor Peoples forced Plaintiff to take the hot food tray in the first place, nor did they make him continue holding a tray that was apparently too hot for him. He was not burned by the food tray itself. Rather, his injury resulted solely from spilling the hot vegetables and gravy directly onto his leg. This accident could have occurred in any number of restaurants or kitchens around the country on any given day, and therefore, as the Tenth Circuit explained in <u>Reynolds</u>, "there is nothing special or unique about plaintiff's situation that will permit him to constitutionalize what is otherwise a state-law tort claim." See <u>Reynolds</u>, 370 F.3d

at 1032.[13]  Consequently, the Court will grant Aramark and Aramark Supervisor Peoples' Motion to Dismiss the Eighth Amendment claims.

### B.    Plaintiff Has Not Sufficiently Stated Eighth Amendment Claims Against Corizon Health and the Medical Office Personnel

As explained previously, on June 27, 2010, Plaintiff was injured from a hot food spill in the late afternoon.  In the evening, after awaking from a short nap, Plaintiff noticed blisters on his leg and immediately went to the Detention Center medical office operated by Corizon Health. Medical office personnel did not provide Plaintiff with any treatment that evening, but told him to return the next day.  The following day, medical office personnel gave Plaintiff a bandage for his blisters.  In August 2010, Plaintiff returned to the medical office on his own seeking further treatment for the blisters, which medical office personnel provided.  Despite this treatment, Plaintiff was apparently left with a scar on his leg.  Based on these events, Plaintiff claims

---

[13] Plaintiff cites Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617 (3d Cir. 2011), to support his contention that service of hot food does present a substantial risk of serious harm under the Eighth Amendment.  The facts of Mutschler are inapposite to the facts of this case for two reasons.  First, in Mutschler the plaintiff was not alleging failure to protect, like the claims against Aramark in the instant case, but rather, he was contending that prison officials were deliberately indifferent to his medical needs.  See id. at 620.  As explained below in the discussion of claims against Corizon Health, a claim of inadequate medical treatment involves a slightly different analysis than a failure to protect claim.  Second, unlike the instant case, the complaint in Mutschler contained detailed factual allegations to support the claim of inadequate medical care.  For example, the plaintiff had notified prison officials upon his arrival that he was allergic to latex.  Despite this documented allergy, the defendant prison nurses gave him latex catheters on three separately identified occasions, causing pain and blistering on his penis.  Here, on the other hand, Plaintiff has not provided any details on who, other than himself, filed complaints with Aramark about the hot food, or when those complaints were filed, or what was the content of the complaints.  Therefore, for the reasons stated above, the Court will dismiss the Eighth Amendment claims against Aramark and Aramark Supervisor Peoples.

Corizon Health and the medical office personnel violated his Eighth Amendment rights by failing to properly care for his leg injury.[14]

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). To state a claim for inadequate medical treatment under the Eighth Amendment, a plaintiff must show: "(1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Id. (citing Estelle, 429 U.S. at 106).

Here, viewing the facts in a light most favorable to Plaintiff, the Court finds that he has failed to sufficiently plead either prong of an Eighth Amendment claim of inadequate medical treatment.

### 1. Corizon Health Medical Office Personnel Were Not Deliberately Indifferent to Plaintiff's Medical Needs

The Third Circuit has defined deliberate indifference to a medical need as follows:

> It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"
>
> "Deliberate indifference," therefore, requires "obduracy and wantonness," which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.

Rouse, 182 F.3d at 197 (internal citations omitted) (paragraph spacing added). Moreover,

"'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of

---

[14] Under West v. Atkins, 487 U.S. 42 (1988), private medical providers that treat inmates are generally held to be "state actors" for purposes of § 1983. See id. at 55-56. In this case, Corizon Health does not dispute being classified as a state actor with respect to the Eighth Amendment claims.

the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" <u>Ascenzi v. Diaz</u>, 247 F. App'x 390, 391 (3d Cir. 2007) (quoting <u>United States ex rel. Walker v. Fayette Cnty.</u>, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

In <u>James v. Pennsylvania Department of Corrections</u>, a case analogous to the instant one, the Third Circuit affirmed the dismissal of a state prisoner's Eighth Amendment claim of improper dental care. 230 F. App'x 195, 196-97 (3d Cir. 2007). In <u>James</u>, the plaintiff was an inmate at the state correctional institute in Bellefonte, Pennsylvania. <u>Id.</u> at 196. On April 20, 2004, he requested to see a prison dentist because of an abscessed tooth. <u>Id.</u> He was given an appointment the following day. <u>Id.</u> The prison dentist took x-rays and then informed the plaintiff that extracting the problem tooth was the only available remedy. <u>Id.</u> The plaintiff at first demanded that the dentist find another method for soothing his pain, but ultimately consented to the removal of his tooth. <u>Id.</u> After it was extracted, the plaintiff saw that the tooth was neither rotten nor decayed and in fact looked perfectly healthy. <u>Id.</u> He also began experiencing severe pain and numbness in his jaw in the area where the tooth had been removed. <u>Id.</u> Based on these issues, the plaintiff filed an Eighth Amendment claim against the prison dentist, which the district court dismissed for failure to state a claim upon which relief may be granted. <u>Id.</u> at 197.

In affirming the dismissal, the Third Circuit explained:

> [The plaintiff's] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his dental care.
> . . . .
>
> [The plaintiff] failed to allege facts that, if proved, would constitute a violation of the Eighth Amendment on the part of [the prison dentist]. [He] alleged no undue delay in receiving treatment and . . . the evidence

he presented established that he received timely care from [the prison dentist]. Although [he] may have preferred a different course of treatment, his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts. Further there is no indication that [the prison dentist's] decision was based on an ulterior motive beyond routine patient care within the confines of the Department's polices. Thus, the district court correctly held that [the plaintiff's] allegations could not constitute deliberate indifference.

Id. at 197-98 (internal citations omitted); see also Ham v. Greer, 269 F. App'x 149, 150-51 (3d Cir. 2008) (dismissing Eighth Amendment claim against a prison dentist, despite allegations that the dentist had negligently performed oral surgery on the plaintiff, because even if "he did not receive the kind or quality of treatment that he would have preferred[,] [t]his simply does not rise to the level of a violation of a constitutionally protected right"); Gillespie v. Hogan, 182 F. App'x 103, 105 (3d Cir. 2006) ("Allegations of negligent treatment are medical malpractice claims, not constitutional violation claims.").

Here, Plaintiff's allegations "merely amount[ ] to a disagreement over the proper course of his treatment and thus fail[ ] to allege [the] reckless disregard" necessary to show deliberate indifference on the part of the Corizon Health medical office personnel. See James, 230 F. App'x at 197. Medical office personnel examined Plaintiff's blisters less than a day after he first brought it to their attention. Though he disagrees with the type of care he was provided, medical office personnel determined a bandage was the appropriate way to treat three coin-sized blisters. At the time of treatment, Plaintiff voiced no concerns to the medical office personnel, nor did he request a follow-up visit. The following month, when Plaintiff felt he needed further care, he promptly received it.[15] Plaintiff acknowledges that medical office personnel provided treatment

---

[15] The prompt medical attention that Plaintiff received is what differentiates this case from Westlake v. Lucas, 573 F.2d 857 (6th Cir. 1976), the case Plaintiff cites in support of his position. In Westlake, the plaintiff had a documented ulcer that required a special diet and medication. Id. at 859. Despite this known condition, the prison guards refused to provide the plaintiff with any

for his leg throughout August 2010.  Consequently, Plaintiff has not sufficiently pled that

Corizon Health medical office personnel were deliberately indifferent to his medical needs.

## 2.     Plaintiff Did Not Have a Serious Medical Need

In addition, the blisters on Plaintiff's leg were not a "serious" medical need for purposes

of an Eighth Amendment claim.  A serious medical need is "such that a failure to treat can be

expected to lead to substantial and unnecessary suffering, injury, or death," and must also be

"'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that

a lay person would easily recognize the necessity for a doctor's attention.'"  Colburn v. Upper

Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) (citation omitted).

Courts have dismissed Eighth Amendment claims where the alleged medical need is

merely a minor physical injury.  For example, in Liverman v. Gubernik, No. 10-2500, 2010 WL

3703314 (E.D. Pa. Sept. 21, 2010), the plaintiff was an inmate at the Bucks County Correctional

Facility.  He claimed to have calluses on his feet that were so painful they prevented him from

standing without pain for any period of time.  Id. at *3.  He requested treatment from the prison

medical staff, but was not seen by a doctor for over a month.  Id.  When he was finally examined,

the prison doctor refused to recommend removal of the painful calluses.  Id.  Based on these

facts, the plaintiff claimed his Eighth Amendment rights were violated for failure to provide

adequate medical treatment.  The court dismissed the claim because, among other reasons, the

plaintiff "ha[d] not demonstrated that his medical needs were serious.  Calluses on a foot, even

---

medical care for over a week, even though he continually asked to see a doctor and, at one point,
began vomiting blood.  Id.  Based on these facts, the Sixth Circuit held that the plaintiff had
sufficiently stated a claim of inadequate medical treatment under the Eighth Amendment.  Id. at
861.  The instant case, on the other hand, contains no allegations that medical office personnel
refused to treat Plaintiff's blisters.  On the contrary, Plaintiff received timely medical care each
time it was requested.

painful ones, are not the type of 'serious medical need' that will result in a constitutional

violation." Id. at *12; see also Sonds v. St. Barnabays Hosp. Corr. Health Servs., 151 F. Supp. 2d

303, 311 (S.D.N.Y. 2011) ("A bleeding finger does not pose a substantial risk of serious harm.

Case law holds that the objective prong of the deliberate indifference test is not satisfied even

where a finger is broken." (citing Henderson v. Doe, No. 98-5011, 1999 WL 378333 (S.D.N.Y.

June 10, 1999)).

Here, as in Liverman and Sonds, Plaintiff has failed to allege a "serious medical need"

for purposes of an Eighth Amendment claim.  Again, Plaintiff spilled hot food onto his leg and,

as a result, had three coin-sized blisters.  Blisters, if left untreated, are not the type of injury that

"can be expected to lead to substantial and unnecessary suffering, injury, or death."  See

Colburn, 946 F.2d at 1023.  Though blisters can require medical treatment — which Plaintiff did

receive in this case — they are not "the type of 'serious medical need' that will result in a

constitutional violation."  See Liverman, 2010 WL 3703314, at *12.

Consequently, the Court will grant Corizon Health's Motion to Dismiss the Eighth

Amendment claims.[16]

_____

[16] The claims against the medical office personnel (John Doe #1 and #2) are based on a failure to
properly treat Plaintiff himself.  As stated above, Plaintiff has not sufficiently pled an Eighth
Amendment claim of inadequate medical treatment.  The claim against Corizon Health, as the
employer of the medical office personnel, is based on a slightly different theory because under
§ 1983 an employer cannot be held liable for an employee's actions on a theory of respondeat
superior.  Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (citing Monell v. Dep't
of Soc. Servs., 436 U.S. 658, 691 (1978)).  To state a § 1983 claim against an employer, "a
plaintiff must prove the existence of a policy or custom that has resulted in a constitutional
violation."  Id.

Here, Plaintiff has failed to specify the "existence of a policy or custom" by Corizon Health that
led to the violation.  In view of the fact that Plaintiff did receive care from medical office
personnel, his conclusory allegations — for example, that Corizon Health "[m]aintain[ed] a
policy, practice, or custom of deliberately staffing and/or understaffing the medical units . . . with
staff who [were] not qualified to treat prisoners for serious and/or emergent medical needs" —

**V.     CONCLUSION**

Based on the foregoing reasons, the Court will grant Defendant Corizon Health's Motion to Dismiss and Defendant Aramark's Motion to Dismiss.

An appropriate Order follows.

---

are not sufficient to state a <u>Monell</u> claim.  Thus, the Court will also dismiss the Eighth Amendment claim against Corizon Health.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WILLIAMS, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 11-6565 |
| LOUIS GIORLA, et al., | |
| Defendants. | |

## ORDER

**AND NOW**, this 2nd day of August 2013, upon consideration of the Second Amended Complaint (Doc. No. 31); Defendant Corizon Health's Motion to Dismiss (Doc. No. 34); Defendant Aramark's Motion to Dismiss (Doc. No. 35); Plaintiff's Responses in Opposition (Doc. Nos. 36 and 39); Defendant Corizon Health's Replies (Doc. No. 42, 43, and 44); the arguments of counsel at the December 19, 2012 hearing; Defendant Aramark's Supplemental Brief in Further Support of the Motion to Dismiss (Doc. No. 47); Plaintiff's Supplemental Brief in Opposition (Doc. No. 49), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** that:

1. Defendant Corizon Health's Motion to Dismiss (Doc. No. 34) is **GRANTED**.

2. Defendants Corizon Health, John Doe #1, and John Doe #2 are **DISMISSED** as Defendants.

3. Defendant Aramark's Motion to Dismiss (Doc. No. 35) is **GRANTED**.

4. Defendants Aramark and Gregg Peoples are also **DISMISSED** as Defendants.

BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.