IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WILLIAMS,<br><br>   Plaintiff,<br><br>v.<br><br>LOUIS GIORLA, et al.,<br><br>   Defendant. | CIVIL ACTION<br>NO. 11-6565 |

**OPINION**

FILED
NOV 26 2013
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**Slomsky, J.**                                                                        **November 26, 2013**

## I. INTRODUCTION

On June 27, 2010, Michael Williams ("Plaintiff") suffered burns to his right leg after dropping a tray of hot food that splashed onto his leg. At the time, Plaintiff was in the process of taking his dinner at the Philadelphia Detention Center where he is currently incarcerated. Plaintiff alleges that the City of Philadelphia, Commissioner of Prisons Louis Giorla, Warden Joyce Adams, and Sergeant Dix (collectively "Defendants") violated Plaintiff's Eight Amendment right to be free from cruel and unusual punishment by serving food on trays which are too hot and pose a substantial risk of serious harm.[1] On August 16, 2013, Defendants filed a Motion for Judgment on the Pleadings, which is now before the Court. (Doc. No. 54.) For reasons that follow, the Court will grant the Motion.[2]

---

[1] Plaintiff also made claims against Aramark Correctional Services, LLC, Gregg Peoples, Corizon Health, Inc., John Doe 1, and John Doe 2. These parties were dismissed as Defendants on August 2, 2013. (Doc. No. 52.)

[2] In deciding this Motion, the Court has considered the following: the Second Amended Complaint (Doc. No. 31), Defendants' Motion for Judgment on the Pleadings (Doc. No. 54), the Response of Plaintiff (Doc. No. 57), and arguments of counsel for the parties during a telephone conference on the Motion held on November 18, 2013.

## II.     FACTUAL BACKGROUND[3]

At all relevant times, Plaintiff Michael Williams was incarcerated at the Detention Center, 8201 State Road, Philadelphia, Pennsylvania. (Doc. No. 31 at ¶ 1.) The Detention Center is part of the Philadelphia Prison System, which is a department within the City of Philadelphia. Defendants Louis Giorla, Commissioner of the Philadelphia Prison System ("Commissioner Giorla"), Joyce Adams, Detention Center Warden ("Warden Adams"), and Sergeant Dix, Detention Center Correctional Officer ("Sergeant Dix"),[4] were responsible for ensuring the safety of inmates housed at the facility. (Id. at ¶¶ 3-8.)

Plaintiff alleges that the City of Philadelphia had a policy, custom and practice of serving food at temperatures of 180 degrees on rubber serving trays that were also heated to temperatures of 180 degrees. (Id. at ¶ 20.) According to Plaintiff, inmates who served the food wore leather gloves to protect their hands from the hot food and trays. (Id. at ¶ 21.) Prior to his accident on June 27, 2010, Plaintiff complained to Defendants about the hot food trays, but nothing was done to address the problem. (Id. at ¶ 22.) Plaintiff contends that other inmates made similar complaints in the past. (Id. at ¶ 23.)

On June 27, 2010, an inmate wearing leather gloves served Plaintiff a hot food tray. (Id. at ¶ 24.) Because the tray was so hot, Plaintiff put it down. (Id. at ¶ 26.) A correctional officer instructed Plaintiff to keep moving and take the tray to his table, or else he would be put in "the hole" or restricted to disciplinary housing. (Id. at ¶ 26.) When Plaintiff picked up the tray to take it to a table, it was too hot for him to hold, so he dropped it. (Id. at ¶ 27.) At that time, scalding hot mashed potatoes, vegetables, and gravy splashed onto Plaintiff's right leg. (Id. at

---

[3] In deciding a Motion for Judgment on the Pleadings, the Court must construe the facts in a light most favorable to a plaintiff and accept all well-pled facts as true. Thus, the following factual narrative is taken entirely from the Second Amended Complaint. (Doc. No. 31.)

[4] Plaintiff has not provided a first name for Sergeant Dix.

2

¶ 28.) Plaintiff removed the food from his leg, returned to his cell block and went to sleep. (Id. at ¶ 29.)

Later that night, Plaintiff woke up and noticed three blisters on his leg. (Id. at ¶ 30.) The largest blister was the size of a silver dollar, and the other two were dime size. (Id.) Plaintiff showed Correctional Officer King[5] the blisters on his leg. (Id. at ¶ 31.) She filled out an incident report and advised Plaintiff to see a prison doctor. (Id.) Plaintiff immediately sought care from the Detention Center medical office but was told by medical office personnel — after a short wait — to come back the following day. (Id. at ¶ 32.)

On June 28, 2010, Plaintiff returned to the Detention Center medical office with a pass provided by Correctional Officer King. (Id. at ¶ 34.) Medical office personnel "placed a band aid on [his] leg." (Id.) At that time, Plaintiff did not voice any complaints about the treatment he received. He was not scheduled for a follow-up visit, nor did medical office personnel initiate any further contact with him concerning his blisters. (Id. at ¶ 35.)

Between August 3 and 5, 2010, Plaintiff, on his own initiative, returned to the Detention Center medical office for further treatment. (Id. at ¶ 36.) Medical office personnel then began providing him with "wound care," which continued for the remainder of the month. (Id.) Because of the heat induced blisters, Plaintiff now has "a highly visible discolored permanent scar the size of a silver dollar [on] his right lower leg," along with mental and emotional harm arising from the injury. (Id. at ¶ 38.)

Based on these events, Plaintiff initiated this civil rights lawsuit against Defendants. The Second Amended Complaint alleges the following violations:

---

[5] Plaintiff has not provided a first name for Correctional Officer King, nor has she been named as a Defendant in this case.

3

- Count I — 42 U.S.C. § 1983, against City of Philadelphia and Commissioner Giorla for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count II — 42 U.S.C. § 1983, against Warden Adams for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count III — 42 U.S.C. § 1983, against Correctional Officer Dix for failure to report the dangers of serving extremely hot meals to inmates on hot trays in violation of the Eighth Amendment.

- Count IV — 42 U.S.C. § 1983, against Aramark for the policy, practice, and/or custom of serving extremely hot meals to Detention Center inmates on hot trays in violation of the Eighth Amendment.

- Count V — 42 U.S.C. § 1983, against Aramark Supervisor Peoples for failure to report the dangers of serving extremely hot meals to inmates on hot trays in violation of the Eighth Amendment.

- Count VI — Negligence and Recklessness, against Aramark and Aramark Supervisor Peoples.

- Count VII — 42 U.S.C. § 1983, against Corizon Health medical office personnel (John Doe #1) for failure to provide necessary medical treatment in violation of the Eighth Amendment.

- Count VIII — 42 U.S.C. § 1983, against Corizon Health medical office personnel (John Doe #2) for failure to provide necessary medical treatment in violation of the Eighth Amendment.

- Count IX — 42 U.S.C. § 1983, against Corizon Health for deliberate indifference to the serious medical needs of Detention Center inmates in violation of the Eighth Amendment.

- Count X — Professional Malpractice, against Corizon Health medical office personnel (John Doe #1).

- Count XI — Professional Malpractice, against Corizon Health medical office personnel (John Doe #2).

- Count XII — Professional Malpractice and Corporate Negligence, against Corizon Health.

(See id. at ¶¶ 42-105.) As noted, all claims against Aramark, Corizon Health, and certain employees and/or agents of each entity were previously dismissed in an Order and Opinion of this Court on August 2, 2013. Williams v. Giorla, No. 11-6565, 2013 WL 3982348 (E.D. Pa. Aug. 2, 2013). Thus, only Counts I, II and III remain. The remaining Defendants have now moved for Judgment on the Pleadings. The Motion is ripe, and for reasons that follow, the Motion will be granted.

## III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R .Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions). Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986). See also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)). A motion for judgment on the pleadings will only be granted where "the plaintiffs would not be entitled to

relief under any set of facts that could be proved." Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

## IV. ANALYSIS

Plaintiff's federal claims against Defendants are based on 42 U.S.C. § 1983. "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Thus, "[t]he first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

Here, Plaintiff contends his Eighth Amendment rights were violated by Defendants who failed to protect him by serving extremely hot food on equally hot trays. "The Eighth Amendment prohibits 'cruel and unusual punishments.' The amendment proscribes punishments that 'involve the unnecessary and wanton infliction of pain.'" Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir.2013) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). Furthermore, the Eighth Amendment "imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must 'result in the denial of the minimal civilized measure of life's necessities.'" Id. (quoting Farmer, 511 U.S. at 835).

To successfully make out a failure to protect claim under the Eighth Amendment, Plaintiff must demonstrate that: (1) "'he is incarcerated under conditions posing a substantial risk of serious harm;' and (2) prison officials operated with 'deliberate indifference to [his] health

or safety.'" Wallace v. Doe, 512 F. App'x 141, 144 (3d Cir. 2013) (quoting Farmer, 511 U.S. at 834). The first prong—substantial risk of serious harm—is "evaluated objectively." Betts, 621 F.3d at 256. "Objectively serious harm . . . requires an assessment of society's view of the risk; i.e., whether 'it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" Id. at 257 (quoting Helling v. McKinney, 509 U.S. 25, 26 (1993) (emphasis in original)). Thus, to satisfy the objective component of an Eighth Amendment claim for failure to protect, a plaintiff must establish: (1) the seriousness of the injury, (2) a sufficient likelihood that serious injury will result from [the challenged conduct], and (3) the risks associated with permitting [the challenged conduct] violate contemporary standards of decency. Id.

### A. Defendants are Entitled to Judgment on the Pleadings Because Plaintiff Failed to Allege a Substantial Risk of Serious Harm Necessary to Establish an Eighth Amendment Violation

Plaintiff contends that the burning and permanent scarring of his flesh constitutes a substantial risk of serious harm necessary to establish an Eighth Amendment violation. (Doc. No. 57 at 5.) In deciding the other defendants' Motion to Dismiss, this Court previously determined that "[w]hen the factors set forth in Betts are applied to the facts of this case, viewed in a light most favorable to Plaintiff, . . . the preparation and service of hot food in the Detention Center cafeteria . . . does not present a 'substantial risk of serious harm.'" Williams, 2013 WL 3982348, at *8. In reaching this conclusion, the Court found: 1) Plaintiff did not suffer a serious injury; 2) The risk of being burned by hot food is not "substantial;" and 3) the risk of injury from spilling hot food onto oneself does not violate contemporary standards of decency. Id. The facts are the same here, and the Court must apply the same standard of review which requires that the facts be construed in a light most favorable to Plaintiff. See Spruill, 372 F.3d at 223 n.2 (explaining that a motion for judgment on the pleadings is analyzed under the same standard as a

motion to dismiss). Under this standard, Plaintiff failed to plead facts that establish a substantial risk of serious harm. For the same reasons explained in detail in the Court's prior Opinion, Williams, 2013 WL 3982348, at *5-8, Plaintiff has not alleged an Eighth Amendment violation to sustain a § 1983 claim against the remaining Defendants.

Moreover, in support of his argument, Plaintiff relies on Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617 (3d Cir. 2011). In that case, the plaintiff, also a prisoner, alleged that the prison's Chief Healthcare Administrator used latex catheters on him, despite knowing that the plaintiff was allergic to latex. Due to this allergy, the plaintiff suffered "pain and blisters on his penis that resulted in scarring, erectile problems, undue stress, and depression about his sex life." Id. at 619. The Third Circuit held that the pleadings were sufficient to make out an Eighth Amendment violation at the motion to dismiss stage. Id. at 621. Here, Plaintiff alleges that Defendants' failure to protect him from a substantial risk of serious harm—the overly hot food and trays—resulted in "a highly visible discolored permanent scar the size of a silver dollar [on] his right lower leg" and mental and emotional harm. (Doc. No. 31 at ¶ 38.) A scar on the lower leg does not rise to the same level of seriousness as scarring to the genitalia with accompanying sexual side effects. Plaintiff's injury is distinguishable from the harm alleged in Mutschler and does not constitute a substantial risk of serious harm.

## V. CONCLUSION

Because Plaintiff has failed to sufficiently state a claim against Defendants upon which relief may be granted, Defendants are entitled to judgment on the pleadings. An appropriate Order follows.